**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

VINTEE AGRAWAL, *individually and*
*on behalf of all others similarly situated,*

|  |  |
|---|---|
| Plaintiff, | Case No.: |
|  | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| RECKITT BENCKISER LLC, a Delaware limited liability company, |  |
| Defendant. |  |

_____

Plaintiff, VINTEE AGRAWAL ("Plaintiff"), individually and on behalf of all others similarly situated in the United States of America, by and through his undersigned counsel, hereby brings this Class Action Complaint against Defendant, RECKITT BENCKISER LLC (hereinafter, "RECKITT BENCKISER" or "Defendant"), and alleges the following upon his own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of his counsel:

## NATURE OF THE ACTION

1.    A recent survey conducted from February 2010 to March 2014 among approximately 24,000 American adults each year on the usage of air freshener spray and room deodorizers by

the people living in their household indicated that in 2013 alone, approximately 75 percent of American households used air freshener and room deodorizers.

2.  Against this backdrop, with consumers desiring products that fit their household needs, Defendant manufactures, markets and sells Airwick® aerosol sprays with false and deceptive labels that overestimate their functional capabilities.

3.  As part of its extensive and comprehensive nationwide marketing campaign, Defendant actively promotes the odor eliminating capabilities of Airwick® aerosol sprays (herein referred to as the "Products," as such term is defined in Paragraph 32 below), claiming that each can "eliminates odors" and "lasts up to 1 hour."

4.  Defendant's Products have very little, if any, odor eliminating capabilities and cannot provide one hour of freshness. By making false, deceptive and misleading statements to consumers, Defendant has deceived hundreds of thousands of consumers into purchasing Airwick® aerosol sprays.

5.  At all material times hereto, Plaintiff and other consumers have been duped into spending significant amounts of money on Products that do not work as represented. Plaintiff and other members of the Class (as defined below), have been harmed by Defendant's fraudulent misrepresentations on the efficacy of its Products.

6.  By marketing that each Product "eliminates odors," Defendant is taking wrongful advantage of consumers' strong preference for products that remove unwanted odors as opposed to simply masking them.

7.  As shown in EXHIBIT A, the representation that the Airwick® aerosol eliminates odors is central to the marketing of the Products and is clearly and prominently displayed on the front and back of the containers, where they cannot be missed by consumers.

2

8.   Defendant has unjustly profited in the lucrative market for odor eliminating products by labeling its Products deceptively and selling them to consumers who sought to purchase products that can actually eliminate unwanted odors and who were willing to pay more for such products. Airwick®

9.   This lawsuit seeks redress for the deceptive manner in which Defendant has and continues to market its Airwick® aerosol sprays to the general public. Plaintiff brings this proposed consumer class action individually and on behalf of all other persons similarly situated, who, from the applicable limitations period up to and including the present ("Class Period"), purchased Airwick® aerosol sprays  for consumption and not resale.

10. Plaintiff seeks to secure, among other things, equitable and declaratory relief, restitution, and alternative damages, for similarly situated United States purchasers, against Defendant, for (1) deceptive acts or practices in violation of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, *et seq.* ("NY GBL"); (2) Breach of Express Warranty; (3) Negligent Misrepresentation and; (4) Unjust Enrichment.

11. In addition to damages, Plaintiff is seeking an Order requiring Defendant to cease packaging, marketing and advertising Airwick® aerosol sprays with misleading statements about its odor eliminating capabilities.

12. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative

class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

14. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

15. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

16. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

17. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiff's claims arise out of Defendant operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and

substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is residents of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this District.

## PARTIES

### *Plaintiff*

19. Plaintiff VINTEE AGRAWAL is, and at all times relevant hereto has been, a citizen of the State of New York and resides in New York County. During the Class Period, Plaintiff AGRAWAL purchased Airwick® aerosol sprays for personal consumption within the State of New York. Plaintiff purchased the Product from stores located in New York County. The purchase price was approximately $1.39 (or more) for individual cans of the "Vanilla Passion" scent. Plaintiff AGRAWAL purchased the Products at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein. At the time of purchase, Plaintiff AGRAWAL did not know that the Products were incapable of eliminating odors. Plaintiff AGRAWAL would not have purchased the Products, or would have paid significantly less for the Products, had she known that the odor and freshness claims were false and deceptive. Plaintiff AGRAWAL was reasonably misled by Defendant's mischaracterization of the capabilities of its Products. Plaintiff AGRAWAL suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein.

### *Defendant*

20. Defendant RECKITT BENCKISER LLC is a corporation organized under the laws of Wisconsin with its headquarters and address for service of process located at 1525 Howe Street,

Racine County, WI 53403. Defendant RECKITT BENCKISER LLC is a privately held global manufacturer of household cleaning supplies and other consumer chemicals. It has operations in 72 countries and its brands are sold in over 110. In 2007, Defendant had more than $7.5 billion in sales.

21. RECKITT BENCKISER develops, markets and sells a line of household air fresheners under the "Airwick®" brand name throughout the United States.

22. RECKITT BENCKISER owns, manufactures and distributes Airwick® aerosol products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Airwick® aerosol sprays at issue. The product label for Airwick® aerosol sprays, relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents with the "eliminates odors" misrepresentation alleged herein. The Product label was designed to encourage consumers to purchase Airwick® aerosol sprays and reasonably misled Plaintiff and the Classes into purchasing the Products.

23. Plaintiff alleges that, at all times relevant herein, RECKITT BENCKISER and its subsidiaries, affiliates, and other related entities, as well as its respective employees, were the agents, servants and employees of RECKITT BENCKISER, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors who delivered and sold the Products, as well as their respective employees, also were RECKITT BENCKISER's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, RECKITT BENCKISER, in concert with its

subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that RECKITT BENCKISER participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

24. Whenever reference in this Complaint is made to any act by RECKITT BENCKISER or its subsidiaries, affiliates, distributors, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of RECKITT BENCKISER committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of RECKITT BENCKISER while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

### Air Freshener Products

25. Air fresheners are products that emit fragrance. As such, air fresheners are frequently used to create a pleasant-smelling and fresh indoor atmosphere in homes and businesses.

26. Statista, an online statistics portal that provides data from market and opinion research, recently reported the results of a survey conducted on usage of air fresheners in U.S. households.[1] According to the survey, which contained results from February 2010 to March 2014 among approximately 24,000 American adults, in 2013 alone, approximately 75 percent of American households indicated that they used air freshener and room deodorizers.[2] Airwick® was reportedly the second most popular brand used, with a market share of 34.3%.[3]

---

[1] *See* http://www.statista.com/statistics/284914/usage-of-air-freshener-spray-and-room-deodorizers-in-the-us-trend/
[2] *Id.*
[3] *See* http://www.statista.com/statistics/275375/us-households-most-used-brands-of-air-freshener-sprays-and-room-deodorizers/

27. Air freshener products have undoubtedly grown into a huge business. In 2011, the Wall Street Journal reported that air freshener sales reached an estimated $7.77 billion in 2010 and were forecasted by market research firm Euromonitor International to continue to grow.[4]

28. There are many different methods and brands of air freshener. The global air fresheners market can be segmented into four divisions: Aerosol Fresheners (e.g., spray cans), Electric Air Fresheners (e.g., plug-ins), Car Air Fresheners (e.g., car vent clips), and Other Air Fresheners Products (e.g., candles, oils, gels, beads).

29. Delivery of the above air freshener mechanisms falls into two broad categories: continuous action and instant action. Continuous action products include: scented candles and devices which use a candle flame or some other heat source to heat and vaporize a fragrance formulation. Instant action systems are mainly aerosol sprays, or atomizers. The aerosol spray uses a propellant and fragrance packaged under pressure in a sealed metal or glass container with a valve which is opened by pressing down a button which contains a spray nozzle – the actuator. When the container's valve is opened by pressing the actuator, fragrance is forced through the spray nozzle located inside the actuator to create a mist of droplets containing fragrance.

30. Air fresheners contain a number of different chemical agents such as fragrances, aerosol propellants, and solvents such as mineral oil or 2-butoxyethanol and other glycol ethers. These odor management products "deodorize" smelly areas by spraying chemical-based fragrances into the air. However, this will only mask odors and not eliminate them.  In fact, these solutions can even cause allergic or asthmatic reactions in those with sensitivities to the chemicals circulating in an indoor environment.

---

[4] *See* http://www.wsj.com/articles/SB10001424052748704076804576180683371307932.

**Airwick® Aerosol Sprays**

31. RECKITT BENCKISER LLC manufactures, distributes, markets, advertises and sells Airwick® aerosol sprays. The Products are available at grocery stores, hardware stores, convenience stores, drug stores and other retail outlets throughout the United States, including online retailers such as Amazon.com.

32. Plaintiff and the Class have purchased Airwick® aerosol sprays in the fragrances listed below (together, the Products"):

- Vanilla Passion
- Cool Linen & White Lilac
- Lavender & Chamomile
- Apple Cinnamon Medley
- Fresh Waters
- Hawaii Kaloko-Honokohau
- Magnolia & Cherry Blossom
- Cool Night Rain

33. Defendant actively promotes the odor eliminating capabilities of Airwick® aerosol sprays, claiming that each can "eliminates odors."

34. Defendant's claims are false, misleading and deceptive because its Products have very little, if any, odor eliminating capabilities and cannot provide one hour of freshness.

35. In determining the meaning of the statements challenged herein, a court may reference dictionary definitions. *See Am. Italian Pasta Co. v. New World Pasta Co*., 371 F.3d 387, 391 (8th Cir. 2004) (referencing a dictionary definition of "favorite"). The Compact Oxford English Dictionary provides that the word "eliminate" means "[t]o expel, exclude, remove, get rid of." The Compact Oxford English Dictionary 141 (2d ed. 1989). The American Heritage Dictionary provides that the word "eliminate" means "to wipe out someone or something, especially by using drastic methods such as banishment or execution." The American Heritage

Dictionary 580 (4th ed. 2000). Thus, the word "eliminate" denotes a complete removal such that the word "complete" is unnecessary and repetitive.[5]

36. Even if Defendant were to claim that its label means the Products "reduce" odor, Defendant's label is nonetheless false, misleading and deceptive. Product packaging that purports to "eliminate" what it can only possibly "reduce" or "mask" is literally false. Additionally, Defendant fails to provide any qualifying/clarifying language to its label claim that the Products eliminate odor.

37. Commonly, the control of odors can be effected by five methods:

- o  Adsorption: Adsorbents like zeolite, activated charcoal, or silica gel may be used to remove odors.
- o  Oxidation: ozone, hydrogen peroxide, peroxide; chlorine, chlorate other oxidizing agent can be used to oxidize and remove organic sources of odors from surfaces and, in the case of ozone, from the air as well.
- o  Air sanitizer: Odors caused by airborne bacterial activity can be removed by air sanitizer that inactivate bacteria.
- o  Surfactants and soaps.
- o  Masking: Overwhelming an odor with another odor by any of the means described above.

38. In addition to creating an unpleasant environment, noxious odors are also often accompanied by airborne health hazards and allergens, including but not limited to, pet dander, smoke particles, mold spores, and bacteria. A main cause of concern and necessary precaution among consumers lies in the repercussions that such odor-causing particles have on an individual's health and well-being.

39. Air fresheners often only succeed in mixing with unpleasant odors to form new smells. Moreover, even when air fresheners succeed in masking disagreeable aromas, they do not address the root of the problem and the source of such odors. Odors are caused by one or more

---

[5] The Third Circuit addressed a similar factual scenario when an advertisement stated that a product could "eliminate" a medical condition. *Belmont Labs., Inc. v. Fed. Trade Comm'n*, 103 F.2d 538, 540-41 (3d Cir. 1939). When the evidence demonstrated that the product could only "alleviate" the condition for a period of time, the advertisement was found to be false. *Id*.

volatilized chemical compounds that humans or other animals perceive by the sense of olfaction. Odorous molecules act as a chemical stimulus; bringing awareness of the presence of airborne chemicals. Bacteria, allergens, dust mites and other volatile organic compounds that linger in the air do not dissipate as a result of spraying Defendant's Products. At best, the Products mix with noxious odor micro-particles to overwhelm/cover up problematic odors but fail to remove the actual airborne particulates, which give rise to the odors, from the air.

40. Only air purifiers can effectively remove airborne particulates and eliminate odors in the household. Unlike air fresheners, air purifiers provide a means to address the actual problem, the odor inducing agents as well as other particles, both annoying and hazardous, which are commonly found in the air.

41. A similar product sold by Defendant's competitor, Procter and Gamble, also promotes and markets its Febreze® Air Effects spray as an instant odor-eliminating room freshener.[6] However, a Consumers' Report test on the Febreze® Air Effects spray demonstrated that the product failed to eliminate odors, and at times, the subjects of the test smelled the very things that Procter and Gamble claimed to be eliminated by Febreze®.[7] Plaintiff experienced the same disappointment in using the Airwick® aerosol sprays at issue.

42. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiff's and the other Class members' reliance upon Defendant's misleading and deceptive representations may be presumed. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

---

[6] *See* http://febreze.com/en-us/products/products-by-type/air-effects
[7] *See* http://www.consumerreports.org/cro/video-hub/1851297443001

43. Reasonable consumers, such as Plaintiff and the Class, rationally expect a product that claims it "eliminates odors" to perform as promised and not simply to mask unpleasant odors.

44. The presence of the "eliminates odors" statement on the labeling is false, misleading and likely to deceive a reasonable consumer.

45. Plaintiff and the Class reasonably relied to their detriment on Defendant's false and misleading "eliminates odors" misrepresentation.

46. Reasonable consumers (including Plaintiff and the Class) must and do rely on manufacturers of household products such as Defendant to honestly report on its product's capabilities, and companies such as Defendant intend and know that consumers rely upon labeling statements in making their purchasing decisions. Such reliance by consumers is also eminently reasonable, since companies are prohibited from engaging in deceptive acts or practices in the conduct of any business, trade or commerce under New York state law.

47. While Defendant labeled and advertised that its Products eliminate odor, the Products fail to perform as promised. The misrepresentation was significant and material given the prominent "eliminates odors" statement on the front of the Product packaging and throughout Defendant's marketing, including its Airwick® website.

48. Defendant knew that it made the "eliminates odors" representation in regard to the Airwick® aerosol sprays, as the statement appears on the Product's packaging. Defendant also knew that the claim was false and misleading, because the Products cannot eliminate odor, they can only mask it. Upon information and belief, Defendant retains expert chemists, other scientists, regulatory compliance personnel, and attorneys, and thus had the ability to know, and did know, that the Airwick® aerosol sprays are incapable of completely eliminating odors.

49. As a result of Defendant's deception, consumers – including Plaintiff and members of the proposed Class – have purchased Products that claim to eliminate odors in reliance on Defendant's labels. Moreover, Plaintiff and Class members have paid a premium for the Products over other similar aerosol products sold on the market.

**Plaintiff Relied on Defendant's Claims and Was Injured**

50. Within the last twelve months, Plaintiff was attracted to Airwick® aerosol sprays because she preferred to consume and use effective and powerful fresheners capable of completely eliminating unpleasant odors. Plaintiff believed that the Products performed as promised by Defendant's packaging and marketing campaign. As a result, the Airwick® aerosol sprays with their deceptive claims on the Product packaging, had no value to Plaintiff.

51. New York has placed requirements on companies that are designed to ensure that the claims they are making about their products to consumers are truthful and accurate.

52. Defendant's labeling and advertising of the Product violates New York consumer protection laws against deceptive acts and practices in the conduct of business.

53. Although Defendant marketed the Product as an odor eliminator, it failed to also disclose material information about the Products; the fact that they could not eliminate odor but simply mask it by adding various fragrances to the Products. This non-disclosure, while at the same time branding the Product as something that "eliminates odors" was deceptive and likely to mislead a reasonable consumer.

54. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Product is deceptive or misleading and therefore unlawful.

55. Plaintiff did not know, and had no reason to know, that the Product was not capable of eliminating unpleasant odors.

56. Defendant's Product labeling was a material factor in Plaintiff's and Class members' decisions to purchase the Products. Relying on Defendant's Product labeling and misleading website, Plaintiff and Class members believed that they were getting Products that were superior to other aerosol spray air fresheners.  Had Plaintiff and the Class known Defendant's Products could not function as promised, they would not have purchased them.

57. Defendant's Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product packaging practice.

58. At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were deceptive as set forth herein, and would not have bought the Product had they known the truth about it.

59. As a result of Defendant's misrepresentations, Plaintiff and thousands of others throughout the United States purchased the Products.

60. Plaintiff and the Classes (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased a Product with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products.

## CLASS ACTION ALLEGATIONS

61. Plaintiff seeks relief in his individual capacity and as representative of all others who are similarly situated. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following classes:

  i.   The Nationwide Class
       All persons in the United States who have made retail purchases of the Airwick® aerosol sprays with deceptive labels, as set forth herein, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

    ii.   <u>The New York Class</u>
        All persons in New York who have made retail purchases of the
        Airwick® aerosol sprays with deceptive labels, as set forth herein,
        during the applicable limitations period, and/or such subclasses as
        the Court may deem appropriate.

62. Excluded from these Classes are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

63. Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

64. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

65. **Numerosity:** Each Class is so numerous that individual joinder of all class members is impracticable. The precise number of members of the Classes is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive nationwide distribution and sales network. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

66. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes. All members of the Classes were exposed to Defendant's deceptive and misleading advertising and

marketing claim that Airwick® aerosol spray "eliminates odors" because that claim was on the front of every bottle. Furthermore, common questions of law or fact include:

    a.  whether Defendant engaged in a marketing practice intended to deceive consumers;

    b.  whether Defendant deprived Plaintiff and the other members of the Classes of the benefit of the bargain because the Product purchased was different than what Defendant warranted;

    c.  whether Defendant deprived Plaintiff and the other members of the Classes of the benefit of the bargain because the Product they purchased had less value than what was represented by Defendant;

    d.  whether Defendant caused Plaintiff and the other members of the Classes to purchase a substance that was other than what was represented by Defendant;

    e.  whether Defendant caused Plaintiff and the other members of the Classes to purchase Products that are incapable of eliminating odor;

    f.  whether Defendant has been unjustly enriched at the expense of Plaintiff and other Class members by its misconduct;

    g.  whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

    h.  whether Defendant should be barred from marketing that Airwick® aerosol spray "eliminates odors."

67. Defendant engaged in a common course of conduct in contravention of the laws sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Similar or identical statutory and common law violations, business practices, and

injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

68. **Typicality:** Plaintiff's claims are typical of those of the members of the Classes because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein.   Plaintiff purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of New York State law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

69. **Adequacy:** Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Classes.   Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the Classes. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their

fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the Classes.

70. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if the members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Classes' claims and the absence of material or dispositive differences in the statute and common laws upon which the claims are based when such claims are grouped as proposed above and below, the Nationwide Class and New York Class will be easily managed by the Court and the parties.

71. **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

72. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes

predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

73. Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

74. Further, in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**
**(Brought on Behalf of the New York Class)**

75. Plaintiff AGRAWAL realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

76. Plaintiff AGRAWAL brings this claim on behalf of herself and the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

77. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

78. To establish a claim under NY GBL § 349, it is not necessary to prove justifiable reliance.  ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

19

79. Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

80. The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Airwick® aerosol spray "eliminates odors" was unfair, deceptive, and misleading to Plaintiff and other New York Class members and in violation of NY GBL § 349 for, inter alia, one or more of the following reasons:

   a. Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiff and the New York Class about facts that could not reasonably be known by them;

   b. Defendant knowingly and falsely represented and advertised that Airwick® aerosol spray "eliminates odors" with an intent to cause Plaintiff and members of the New York Class to believe that they could function as promised;

   c. Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

   d. Defendant caused Plaintiff and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

e.  Defendant failed to reveal material facts to Plaintiff and the New York Class with the intent that Plaintiff and the New York Class members rely upon the omission;

f.  Defendant made material representations and statements of fact to Plaintiff and the New York Class that resulted in Plaintiff and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

g.  Defendant intended that Plaintiff and the members of the New York Class rely on its misrepresentations and omissions, so that Plaintiff and New York Class members would purchase the Product.

81. The foregoing deceptive acts and practices were directed at customers.

82. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

83.  Defendant's actions impact the public interest because Plaintiff and members of the New York Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

84.  Plaintiffs and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise that Airwick® aerosol spray "eliminates odors." Plaintiff AGRAWAL believed Defendant's representation that the Products would function as promised. Plaintiff AGRAWAL would not have purchased the Products had she known that they could not actually eliminate odors.

85. Plaintiff AGRAWAL was injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as described herein. Plaintiff AGRAWAL paid for an products that could eliminate odor, but did not receive such Products. The products she received were worth less than the products for which she paid.

86. Plaintiff AGRAWAL and New York Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under NY GBL § 349.

## COUNT II

### BREACH OF EXPRESS WARRANTIES
(Brought on Behalf of the New York Class)

87.    Plaintiff AGRAWAL realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

88.    Plaintiff AGRAWAL brings this claim on behalf of herself and the other members of the New York Class for breach of express warranty under New York law.

89.    Defendant provided Plaintiff AGRAWAL and other members of the New York Class with written express warranties, including, but not limited to, a warranty that its Airwick® aerosol spray "eliminates odors." The claims made by Defendant were an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise.

90.    Plaintiff AGRAWAL and other members of the New York Class placed importance on Defendant's odor and freshness claims in deciding to purchase the Products.

91.     Defendant breached its warranties by manufacturing, selling and/or distributing a Product to consumers that is prominently labeled "eliminates odors" but that cannot function as promised.

92.     Defendant previously knew or should have known of the falsity of its odor and freshness claims as manufacturer of the Product. Thus, Defendant had actual and/or constructive notice that its claims are false and to date has taken no action to remedy its breach of express warranty.

93.     As a proximate result of Defendant's breach of warranties, Plaintiff AGRAWAL and the New York Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on a product that did not have any value or had less value than warranted or a product that they would not have purchased and used had they known the true facts about it.

94.     As a result of the breach of these warranties, Plaintiff AGRAWAL and the New York Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate by the Court.

## COUNT III

### NEGLIGENT MISREPRESENTATION
**(Brought on Behalf of the Nationwide Class or, Alternatively, the New York Class)**

95.     Plaintiff AGRAWAL realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

96.     Plaintiff AGRAWAL brings this claim individually, as well as on behalf of members of the Nationwide Class.

97.     In the alternative, Plaintiff AGRAWAL brings this claim individually as well as on behalf of the New York Class under New York law.

98.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff AGRAWAL and members of the Class. Defendant has negligently represented that Airwick® aerosol spray "eliminates odors," when in fact, it does not.

99.     In making the representations of fact to Plaintiff AGRAWAL and members of the Classes described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

100.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentation to induce the reliance of Plaintiff AGRAWAL and members of the Classes.

101.    Plaintiff AGRAWAL and members of the Classes relied upon these false representations and nondisclosures by Defendant when purchasing the Product, which reliance was justified and reasonably foreseeable.

102.    As a result of Defendant's wrongful conduct, Plaintiff AGRAWAL and members of the Classes have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

### UNJUST ENRICHMENT
**(Brought on Behalf of the Nationwide Class or, Alternatively, the New York Class)**
**(Pleaded in the Alternative)**

103.    Plaintiff AGRAWAL realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

104.    Plaintiff AGRAWAL asserts this claim in the alternative in the event that the Court concludes that Plaintiff AGRAWAL lacks an adequate remedy at law.

105.    Plaintiff AGRAWAL brings this claim individually, as well as on behalf of members of the Nationwide Class. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, New York law may be applied to the claims of the Nationwide Class.

106.    In the alternative, Plaintiff AGRAWAL brings this claim individually as well as on behalf of the New York Class under New York law.

107.    At all times relevant hereto, Defendant deceptively labeled, marketed, advertised that Airwick® aerosol spray "eliminates odors" to Plaintiff AGRAWAL and the Classes.

108.     Plaintiff AGRAWAL and members of the Classes reasonably relied on Defendant's odor and freshness representations, and in reasonable reliance thereon, purchased the Products.

109.     Plaintiff AGRAWAL and members of the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have due to Defendant's deceptive labeling, advertising, and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff AGRAWAL and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff AGRAWAL and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

110.     Defendant has been unjustly enriched in retaining the revenues derived from purchases of Defendant's Product by Plaintiff AGRAWAL and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that Airwick® aerosol spray "eliminates odors" when it does not, which caused injuries to Plaintiff AGRAWAL and members of the Classes because they paid a price premium due to the mislabeling of the Product.

111.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff AGRAWAL and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff AGRAWAL and members of the Classes for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as  representatives of the Nationwide Class and/or the New York Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Classes;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Classes and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiff and all members of the Classes the amounts paid for the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.


Dated: April 4, 2016

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*


By: ___/s/C.K. Lee_____
       C.K. Lee